# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 7, 2008        Decided March 6, 2009

No. 05-5117

KHALED A.F. AL ODAH, NEXT FRIEND OF FAWZI KHALID
ADBULLAH FAHAD AL ODAH, ET AL.,
APPELLEES

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLANTS

Consolidated with 05-5120, 05-5121,05-5123, 05-5124,
05-5125, 05-5126, 05-5127

Appeals from the United States District Court
for the District of Columbia
(No. 02cv00828)

*August E. Flentje*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Gregory G. Katsas*, Assistant Attorney General at the time the briefs were filed, *Jonathan F. Cohn*, Deputy Assistant Attorney General, *Douglas N. Letter*, Terrorism Litigation Counsel, and *Robert M. Loeb*, Attorney.

*David H. Remes* argued the cause and filed the briefs for appellees.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

PER CURIAM:  These consolidated cases come to us with a long history.  We now review a 2005 order of the district court compelling disclosure of certain classified information to counsel for certain detainees held at Guantanamo Bay, Cuba. That discovery order was issued well before the Supreme Court, in its June 2008 opinion in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), ruled that the writ of habeas corpus is available to these detainees, and well before the district court issued the case management order that currently governs their habeas proceedings.[1]  After issuing the discovery order, the district court stayed all proceedings in these cases pending resolution of the government's appeal from the court's denial of its motion to dismiss the detainees' habeas petitions.  This circuit, in turn, held the government's appeal from the discovery order in abeyance pending the circuit's and the Supreme Court's resolution of other appeals regarding the detainees' legal status. After the Supreme Court issued *Boumediene*, the parties filed motions to govern, and this appeal from the discovery order was taken out of abeyance and assigned to the present panel.

---

[1]The discovery order also predates Executive Order 13,492, which directs the "prompt and thorough review of the factual and legal bases for the continued detention of all individuals currently held at Guantanamo."  Review and Disposition of Individuals Detained at the Guantanamo Bay Naval Base and Closure of Detention Facilities, Exec. Order No. 13,492, § 2(d), 74 Fed. Reg. 4897, 4898 (Jan. 27, 2009).

The parties now largely agree upon the legal framework that should govern the issuance of discovery orders of this kind, as do we. In accordance with that framework, we remand the discovery order to the district court so that it may consider the findings required before such an order may issue. In so doing, we note several specific points concerning the manner in which a remand under that framework should proceed.

I

We begin with a brief overview of the relevant chronology and then move to a more detailed description of the developments that led to the discovery order at issue here.

A

The Department of Defense (DOD) ordered the detention at the U.S. Naval Base at Guantanamo Bay, Cuba of certain foreign nationals captured abroad after al Qaeda attacked the World Trade Center and the Pentagon on September 11, 2001. *Boumediene*, 128 S. Ct. at 2241. To determine whether Guantanamo Bay detainees are "enemy combatants," as defined by DOD, the Deputy Secretary of Defense established Combatant Status Review Tribunals (CSRTs). *Id.* Each CSRT relied on an administrative record compiled by a military officer to support the government's case for detention. *See Bismullah v. Gates*, 501 F.3d 178, 181-82 (D.C. Cir. 2007), *vacated*, 128 S. Ct. 2960 (2008), *reinstated*, Order, No. 06-1197 (D.C. Cir. Aug. 22, 2008), *petitions dismissed for lack of jurisdiction*, 551 F.3d 1068 (D.C. Cir. 2009). Separate CSRTs concluded that the petitioners here were enemy combatants. To contest their detentions, they filed petitions for writs of habeas corpus in the United States District Court for the District of Columbia.

Roughly two years after the first detainees arrived at Guantanamo, the Supreme Court held that the federal habeas statute, 28 U.S.C. § 2241, applied to their detention. *Rasul v. Bush*, 542 U.S. 466, 481 (2004). Most of the Guantanamo habeas cases were then consolidated before a single district judge to "coordinate and manage all proceedings . . . and to the extent necessary, rule on procedural and substantive issues." Order at 6, *Rasul v. Bush*, No. 02-0299 (D.D.C. Aug. 17, 2004). On January 31, 2005, the district court denied the government's motion to dismiss the petitions for failure to state a claim upon which relief can be granted. *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 464 (D.D.C. 2005), *vacated*, *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *rev'd*, 128 S. Ct. 2229 (2008). The court also granted petitioners' counsel access to the complete (unredacted) classified factual returns filed by the government in support of detention. Order Granting Nov. 8, 2004 Mot. to Designate "Protected Information" and Granting Nov. 18, 2004 Mot. for Access to Unredacted Factual Returns at 2, *In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Jan. 31, 2005) [hereinafter Discovery Order]. The government appealed both orders. The district court then stayed the proceedings "for 'all purposes' pending resolution of all appeals in this matter." Order Granting in Part and Denying in Part Respondents' Mot. for Certification of Jan. 31, 2005 Orders and for Stay at 2, *In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Feb. 3, 2005).

While those appeals were pending, Congress twice amended 28 U.S.C. § 2241 to deny the Guantanamo detainees habeas review. First, Congress passed the Detainee Treatment Act of 2005 (DTA), Pub. L. No. 109-148, 119 Stat. 2680 (2005), but the Supreme Court held that the provision of the DTA depriving courts of jurisdiction over the detainees' habeas petitions did not apply to cases pending when the DTA was enacted. *Hamdan v. Rumsfeld*, 548 U.S. 557, 575-78 (2006). Next, Congress passed

the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600 (2006) (codified in part at 28 U.S.C. § 2241 & note), but the Supreme Court's *Boumediene* decision declared that the detainees have a constitutional right to habeas and struck down the jurisdiction-stripping provision of the MCA as an unconstitutional suspension of the writ. 128 S. Ct. at 2240.

This circuit had held the appeal of the Discovery Order in abeyance pending the outcome of *Boumediene*. *See* Order at 1-2, *Al Odah v. United States*, No. 05-5117 (D.C. Cir. Mar. 17, 2006); *see also* Order at 1, *Al Odah v. United States*, No. 05-5117 (D.C. Cir. Aug. 8, 2007). After *Boumediene* issued, the parties filed motions to govern, and the case was set for supplemental appellate briefing and oral argument. At the same time, the district court made additional preparations to manage the detainee habeas caseload and resolved, through executive session on July 1, 2008, to designate another district judge "to coordinate and manage proceedings in [nearly] all cases involving petitioners presently detained at Guantanamo Bay, Cuba." *See* Order at 1-2, *In re: Guantanamo Bay Detainee Litigation*, No. 08-442 (D.D.C. July 2, 2008). On November 6, the day before oral argument in the present appeal, the new coordinating judge issued a case management order detailing the procedures for the disclosure of classified information going forward. *See* Case Management Order, *In re: Guantanamo Bay Detainee Litigation*, No. 08-442 (D.D.C. Nov. 6, 2008), *amended by* Order (D.D.C. Dec. 16, 2008). At oral argument, both sides agreed that the district court's new case management order does not affect the finality of this appeal.

And so, in this case we confront a January 31, 2005, Discovery Order that predates both *Boumediene* and the district court's current case management order, but nonetheless remains operative with respect to a small group of classified factual

returns. We discuss the genesis and content of that order in more detail below.

B

In August 2004, the district court issued an order that incorporated the government's proposed schedule for filing returns identifying the factual support for each petitioner's detention as an enemy combatant. *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 451. As factual support, the government submitted the records from the petitioners' CSRT proceedings. *Id*. The government filed its returns on a rolling basis as the CSRT proceedings were completed, submitting the earliest in September and the latest in December 2004. *Id*. at 451-52. Because each CSRT record contained classified information, the government filed redacted, unclassified versions on the public record and submitted the full, classified versions for the court's *in camera* review. *Id.* at 452. The government also served copies containing most but not all of the classified information in the court's copies on those petitioners' counsel who had obtained security clearances. *Id*. During this period, the district court issued multiple orders regarding the submission of the factual returns, including a protective order. Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, *In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Nov. 8, 2004) [hereinafter Protective Order].

In November 2004, in response to the government's notice indicating that it would not provide cleared counsel with all of the classified information in the factual returns submitted to the court, the petitioners' counsel moved for "immediate access to the unredacted returns." Petitioners' Motion for Access to Unredacted Factual Returns and to Compel Respondents to Comply with Order on Protected Information Procedures at 1-2,

*In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Nov. 18, 2004).  In reply, the government stated that it had redacted from counsel's copies two categories of classified information: (1) information "pertain[ing] to individuals other than the detainee at issue," Government's Supp. Br. 5, which information, the government said, the detainee had no "need to know," *id.* at 4; and (2) "especially sensitive source-identifying information," *id.* at 5.  To justify the redactions, the government submitted boilerplate certifications stating that the redacted information "do[es] not support a determination that the detainee is *not* an enemy combatant."  *Id.* at 5; *see* Supp. Pub. App. 13.

After reviewing the *in camera* submissions, the district court found the redacted information "relevant to the merits of this litigation" and concluded that petitioners' counsel with security clearances were entitled to see it, subject to the terms of the Protective Order.  Before us today is the government's appeal from the order granting counsel access to the redacted information.  Discovery Order at 2.

II

As a preliminary matter, we conclude that the government's notice of appeal was timely.  The district court's order directing disclosure of the unredacted classified information was issued on January 31, 2005, and the government filed its notice of appeal on March 14, 2005.  This was well within the sixty-day time limit provided under Federal Rule of Appellate Procedure 4(a)(1)(B).

We also conclude that we have jurisdiction to review the district court's Discovery Order under the collateral order exception to the final judgment rule.  The collateral order exception allows appellate review of an interlocutory order if the order: "'[1] conclusively determine[s] the disputed question, [2]

resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment.'" *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 533 F.3d 837, 843 (D.C. Cir. 2008) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). The Discovery Order meets these requirements.

First, the order conclusively determines the disputed question: the government's obligation to disseminate classified information to the petitioners' attorneys. Second, the order resolves an important issue that is separate from the merits of the case. The classified materials at issue are designated by the government at the "secret" level. By Executive Order, the "secret" classification applies to information, "the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe." Exec. Order No. 13,292, § 1.2(a)(2), 68 Fed. Reg. 15,315, 15,315-16 (Mar. 25, 2003). The lawfulness of an order directing the dissemination of this information over the objection of the government is an important issue entirely separate from the merits of this case. Finally, the Discovery Order is effectively unreviewable on appeal from a final judgment. Once the information is disclosed, the "cat is out of the bag" and appellate review is futile. *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998); *see United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003).

III

We review the district court's Discovery Order for abuse of discretion. *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 737 (D.C. Cir. 2007) ("'The district court has broad discretion in its handling of discovery, and its decision to allow

or deny discovery is reviewable only for abuse of discretion.'" (quoting *Brune v. IRS*, 861 F.2d 1284, 1288 (D.C. Cir. 1988)); *see Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003). The parties' positions have evolved over the course of this litigation, and the most recent round of briefs shows that there is little disagreement regarding the appropriate legal framework for resolving this matter. Both the government and the petitioners urge us to rely, by analogy, on the procedures applicable to criminal proceedings and to appellate review under the DTA.[2] They disagree, however, as to how we should apply those procedures here.

A

The district court directed disclosure to petitioners' counsel of the redacted classified information on the ground that it was "relevant to the merits of this litigation." In the context of criminal proceedings, however, this court has held that "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Rather, "the threshold for discovery in this context further requires that . . . [the] information . . . is at least 'helpful to the defense of [the] accused.'" *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)); *see United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006); *United*

---

[2]On January 9, 2009, the court in *Bismullah v. Gates* held, on rehearing after the Supreme Court's decision in *Boumediene*, that "this court lacks subject matter jurisdiction over . . . detainees' petitions for review of their status determinations by a CSRT" under the DTA. *Bismullah v. Gates*, 551 F.3d 1068, 1075 (D.C. Cir. 2009). That holding does not affect our disposition of this habeas case because both we and the parties have employed *Bismullah*'s language and framework only by analogy.

*States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998). This standard applies with equal force to partially classified documents: "if some portion or aspect of a document is classified, a defendant is entitled to receive it only if it may be helpful to his defense." *Rezaq*, 134 F.2d at 1142. Hence, before the district court may compel the disclosure of classified information, it must determine that the information is both relevant *and material* -- in the sense that it is at least helpful to the petitioner's habeas case. And because such disclosure is in the context of a habeas proceeding, the touchstone of which is the court's "authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain," *Boumediene*, 128 S. Ct. at 2269, the court must further conclude that access by petitioner's counsel (pursuant to a court-approved protective order) is necessary to facilitate such review.

Although both sides agree that materiality and not mere relevance is the threshold standard, they dispute whether the district court ordered disclosure based solely on relevance or whether it in fact made a materiality determination. The court's order simply states that the classified information is "relevant." Discovery Order at 2. Although we acknowledge that the district court may well have considered materiality as an implicit part of the relevance analysis, the Order does not indicate whether that is the case. Absent such an indication and an explanation of the court's reasoning, we cannot at this stage conclude that the redacted information is in fact material.

At the same time, we reject the government's suggestion that its mere "certification" -- that the information redacted from the version of the return provided to a detainee's counsel "do[es] not support a determination that the detainee is *not* an enemy combatant" -- is sufficient to establish that the information is not material. Government's Supp. Br. 10, 17 n.5. That naked declaration simply cannot resolve the issue. *Cf. Parhat v. Gates*,

11

532 F.3d 834, 850 (D.C. Cir. 2008) (rejecting "the government's contention that it can prevail by submitting documents that read as if they were indictments or civil complaints, and that simply assert as facts the elements required to prove that a detainee falls within the definition of enemy combatant[, because] [t]o do otherwise would require the courts to rubber-stamp the government's charges"). As the unredacted material was submitted to the court, it is the court's responsibility to make the materiality determination itself.

Moreover, even if it is true that the redacted information in the return "does not support a determination that the detainee is *not* an enemy combatant" -- i.e., that the information is not directly exculpatory -- that is not the only ground upon which information may be material in the habeas context. The court must still assess whether the information is *actually* inculpatory, because the government submitted the full habeas return in support of its contention that the detainee *is* an enemy combatant. Evaluation of that contention requires the court to assess the reliability of the sources upon which the return is based. Hence, indications of unreliability are themselves material. *Cf. Boumediene*, 128 S. Ct. at 2269 (noting that the most relevant deficiencies of the CSRTs as compared to habeas proceedings are "the constraints upon the detainee's ability to rebut the factual basis for the Government's assertion that he is an enemy combatant"). For example, the court may fear, or counsel may proffer evidence, that a source is biased or that his testimony was the product of coercion. Similarly, if a source asserts that he saw the petitioner at a particular place and time, evidence that the source was elsewhere at that time would discredit his claim.

Information that is not exculpatory on its face may also be material if it contains the names of witnesses who can provide helpful information. In this regard, the government's further

"certification," again on its own authority and without explanation, that the petitioner does not have a "need to know" "information pertaining to individuals other than the detainee" cannot end the inquiry.  A list of individuals "other than the detainee" may be a list of witnesses useful to the detainee:  for example, when the list names other detainees the government alleges trained at a certain al Qaeda training camp with the detainee,[3] but who would testify to the contrary.

At oral argument, counsel for the government stated his "understanding that in the factual returns" that the government had been filing in more recent detainee habeas cases, "in most circumstances other detainee identities are not being withheld." Oral Arg. Recording at 49:50.  In light of counsel's statement that "the government is using a somewhat different standard now," *id.*, we asked the government to reconsider whether it wanted to continue withholding such material in the instant cases.  Soon after oral argument, however, the Justice Department advised the court that the government continues to redact material pertaining to individuals other than the detainee at issue.  "The rationale," the Department stated, is that a "list of individuals other than the petitioner . . . do[es] not serve as affirmative evidence that the petitioner is an enemy combatant." Dep't of Justice Rule 28(j) Letter, Nov. 10, 2008.

The government's rationale in this letter appears to be the inverse of the rationale it advanced in the declarations that originally accompanied the factual returns:  the initial

---

[3]The government has redacted such names in the returns that are at issue on this appeal. *See* Government's Supp. Br. 5 n.1 ("[W]hen a petitioner was just one among many individuals identified in an intelligence report -- such as a list of individuals who trained at certain al Qaeda training camps -- the government redacted the names of the other individuals.").

declarations stated that the redacted material does not tend to show that the detainee is *not* an enemy combatant (i.e., that it is not exculpatory), while this most recent letter states that the redacted material is not affirmative evidence that the detainee *is* an enemy combatant (i.e., that it is not inculpatory). But the fact that information does not serve as "affirmative evidence" against a detainee does not render it immaterial. Information that is exculpatory, that undermines the reliability of other purportedly inculpatory evidence, or that names potential witnesses capable of providing material evidence may all be material. *Cf. Boumediene*, 128 S. Ct. at 2270 ("[The court] also must have the authority to admit and consider relevant exculpatory evidence that was not introduced during the earlier proceeding. Federal habeas petitioners long have had the means to supplement the record on review . . . . Here that opportunity is constitutionally required.").

The government's letter also belatedly offers to provide the district court with the government's own "particularized assessment of whether the information is material." Dep't of Justice Rule 28(j) Letter, Nov. 10, 2008. Such a proffer, combined with an explanation of why nondisclosure is warranted, is necessary for meaningful judicial decisionmaking, and the district court should not hesitate to require that it be filed contemporaneously with a government request for redactions. *Cf. Parhat*, 532 F.3d at 853 (requiring the government to file a statement "specifically explaining why protected status is required for the information that has been marked" for redaction); *id.* ("Without an explanation tailored to the specific information at issue, we are left with no way to determine if it warrants protection -- other than to accept the government's own designation."). In this case, the district court should require the government to make the filing upon remand.

As the record now stands, without an explanation of the grounds for finding materiality by the district court and without support for the claim of immateriality from the government, we cannot resolve the issue of materiality on our own. A remand is therefore required.

B

As neither side disputes, the analogy to criminal proceedings also indicates that, before ordering disclosure of classified material to counsel, the court must determine that alternatives to disclosure would not effectively substitute for unredacted access. In criminal proceedings under the Classified Information Procedures Act (CIPA), for example, the government may move for alternatives to disclosing classified information, such as substituting "a statement admitting relevant facts that the specific classified information would tend to prove" or "a summary of the specific classified information." 18 U.S.C. App. III, § 6(c)(1). The district court must "grant such a motion . . . if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *Id.*

These or other alternatives should also be available in habeas if the district court determines that a proposed admission or summary would suffice to provide the detainee with "a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Boumediene*, 128 S. Ct. at 2266; *see id.* (holding that the "privilege of habeas corpus entitles the prisoner to [such an] opportunity"). *See generally id.* at 2276 ("We recognize . . . that the Government has a legitimate interest in protecting sources and methods of intelligence gathering; and we expect that the District Court will use its discretion to accommodate

this interest to the greatest extent possible."); *Parhat*, 532 F.3d at 849-50 (discussing the use of the CIPA analogy in dealing with sensitive classified information in DTA reviews). We note, moreover, that although a finding of materiality is a prerequisite to ordering disclosure of classified information, it is not a prerequisite to ordering disclosure of an unclassified substitution. If the court determines that the assistance of petitioner's counsel would facilitate the making of a materiality determination, nothing bars it (assuming no other privilege is at issue) from compelling the government to produce an unclassified substitution that will enable counsel to assist the court.

As the record does not indicate whether the district court considered unclassified alternatives before ordering disclosure of classified information, this issue must be addressed on remand as well.

C

In *Boumediene*, the Supreme Court made clear that, although "[h]abeas corpus proceedings need not resemble a criminal trial," the "writ must be effective. The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." 128 S. Ct. at 2269. Contrary to the government's suggestion, this court's opinion in *Bismullah* did not hold that the government's submission of classified materials to the court for *in camera*, *ex parte* review ends that inquiry. *Bismullah* did indicate that, in DTA cases, "highly sensitive information, or information pertaining to a highly sensitive source or to anyone other than the detainee" should be presented first "to the court ex parte and in camera." 501 F.3d at 187. And it further stated that, once such information is presented to the court, the "presumption" under the DTA that "counsel for a detainee has

a 'need to know' all Government Information concerning his client" "is overcome." *Id.*[4] But *Bismullah* did not address how a district court should proceed once that *presumption* was overcome by an *ex parte*, *in camera* presentation. As indicated above, we now conclude that the habeas court should proceed by determining whether the classified information is material and counsel's access to it is necessary to facilitate meaningful review, and whether no alternatives to access would suffice to provide the detainee with the meaningful opportunity required by *Boumediene*.

On the current record, we are unable to determine whether the district court found that the redacted classified information was material to the detainees' cases and necessary to facilitate meaningful habeas review. Nor can we determine whether the court found that alternatives to disclosure were insufficient. Given the scope of the problems presented to the district court in the underlying proceedings, and the court's prescience in anticipating the Supreme Court's conclusion in *Boumediene* regarding the availability of habeas, we do not make these observations by way of criticism. Nonetheless, they do require us to vacate the discovery order and to remand for further proceedings. Because we do so, we do not address additional issues that may become relevant if the threshold requirements for disclosure to counsel are met. As the Court said in *Boumediene*, "[w]e make no attempt to anticipate all of the evidentiary . . . issues that will arise during the course of the detainees' habeas corpus proceedings," because "[t]hese and the other remaining questions are within the expertise and competence of the District Court to address in the first instance."

---

[4]We do not address the applicability of such a presumption in the cases under consideration here, as this appeal only concerns counsel's access to classified information contained in factual returns filed by the government in support of the petitioners' detention.

128 S. Ct. at 2276.[5]  Nor do we address "the content of the law that governs petitioners' detention," which is also a "matter yet to be determined."  *Id.* at 2277.

We are cognizant, however, of the detainees' concern that listing these threshold requirements as if they were iterative steps that must be accomplished one at a time may inordinately delay resolution of their habeas petitions, in contravention of *Boumediene*'s declaration that "detainees in these cases are entitled to a prompt habeas corpus hearing."  *Id.* at 2275. Accordingly, and contrary to the view of the government, we do not suggest that the district court must make these findings seriatim.  Nothing precludes the court from concluding, in its discretion, that simultaneous resolution would be more efficient. But however the court resolves the disclosure issue, it must state its individualized determinations on the record in order to enable informed appellate review.

---

[5]For example, as has also been true in the analogous criminal cases that this court has decided to date:  "[W]e need not decide whether a defendant's [or detainee's] interest in information that is helpful, but that does not rise to the level that is subject to disclosure under *Brady v. Maryland*, can overcome the government's interest in protecting properly classified information."  *Mejia*, 448 F.3d at 457 n.18 (citing *United States v. Gaston*, 357 F.3d 77, 84 (D.C. Cir. 2004)); *cf. Boumediene*, 128 S. Ct. at 2276 (noting that the Court has "recogniz[ed] an evidentiary privilege in a civil damages case where there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged" (internal quotation marks omitted)).

18

IV

For the foregoing reasons, the order of the district court is vacated and the cases are remanded for further proceedings consistent with this opinion.

*So ordered.*