**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2194
_____

JOSE ANDRES CANTARERO, AKA Manuel De Dios De
Dios, AKA Jose Cantarero-Lainez, AKA Jose Cantarego-Lainez,

                                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

                                                                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095-041-758)
Immigration Judge:  Honorable Leo A. Finston
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2018
Before:  JORDAN, RESTREPO and SCIRICA, Circuit Judges

(Opinion filed: May 25, 2018)
_____

OPINION*
_____

PER CURIAM

        Jose Andres Cantarero petitions for review of his order of removal to El Salvador.

We will deny the petition.

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Cantarero is a citizen of El Salvador who entered the United States without valid documents. While here, he obtained temporary protected status ("TPS") following an earthquake in El Salvador. In 2013, Cantarero was arrested and charged with felonious third-degree assault by automobile in violation of N.J. Stat. Ann. § 2C:12-1(c)(2). The Government inquired into Cantarero's arrest and then revoked his TPS status when he failed to respond. Cantarero ultimately was convicted of the charge and sentenced to three years in prison. Cantarero's felony conviction renders him ineligible for reinstatement of his TPS status. See 8 U.S.C. § 1254a(c)(2)(B)(i).

After revoking Cantarero's TPS status, the Government charged him as removable for being in the United States without valid documents, and the matter was referred to an Immigration Judge ("IJ"). Cantarero conceded the charge but, through counsel, he applied for withholding of removal and relief under the Convention Against Torture ("CAT"). (He also initially applied for asylum, but his request for asylum was untimely and his counsel later withdrew it on that basis.) Cantarero claimed that the El Salvadoran army forcibly conscripted him during a civil war when he was a minor and then mistreated him before he fled the country in 1995. He further claimed that he faces persecution and torture for desertion if he returns.

Cantarero sought several continuances before the IJ on the ground that he was challenging his New Jersey conviction in a post-conviction relief ("PCR") petition which,

---

constitute binding precedent.

if successful, may have permitted him to seek reinstatement of his TPS status. The IJ

denied Cantarero's final request.

The matter then proceeded to a hearing before a different IJ, and Cantarero

testified and offered evidence in support of his claims. The IJ found Cantarero credible

but denied his applications for relief and ordered his removal to El Salvador. Cantarero

appealed pro se and presented new evidence to the Board of Immigration Appeals

("BIA"). The BIA dismissed Cantarero's appeal and declined to remand for

consideration of his new evidence. Cantarero petitions for review pro se.[1]

## II.

Cantarero has not raised any specific challenge to the BIA's ruling in his brief. As

the Government argues, we could deem any such challenges waived for that reason.

Nevertheless, we liberally construe Cantarero's filings before the BIA, the BIA's

decision, and Cantarero's brief on review as raising five issues. Each lacks merit.

First, Cantarero asserts in his brief that "I was not present in court" when "the

district court denied my application." Cantarero did not raise this issue before the BIA,

and his reference to the "district court" suggests that he is confusing this proceeding with

---

[1] We have jurisdiction pursuant to 8 U.S.C. § 1252(a) to the extent that Cantarero exhausted issues before the BIA or the BIA addressed them sua sponte. See 8 U.S.C. § 1252(d)(1); Lin v. Att'y Gen., 543 F.3d 114, 120-21 (3d Cir. 2008). We review factual determinations for substantial evidence and will not disturb them unless the evidence compels a contrary conclusion. See Uddin v. Att'y Gen., 870 F.3d 282, 289 (3d Cir. 2017). We review legal issues de novo. See id. We review for abuse of discretion an IJ's denial of a continuance, see Khan v. Att'y Gen., 448 F.3d 226, 233 (3d Cir. 2006), and the BIA's denial of a motion to reopen/remand, see Huang v. Att'y Gen., 620 F.3d

a federal habeas proceeding that he brought while in immigration custody. In any event, Cantarero was present with his counsel before the IJ for his hearing and when the IJ denied his applications. (A.105.)

Second, the BIA concluded that Cantarero did not show that the mistreatment he suffered in the past was severe enough to rise to the level of persecution. We agree. Cantarero testified that, after he initially escaped from the El Salvadoran army, soldiers recaptured him and then "punished" and "mistreated" him. (A.119, 125.) Cantarero further testified than an officer told Cantarero that "he will kill me" if he ever left again. (A.119.) Cantarero provided no other details about this mistreatment or the threat. Thus, we cannot say that the BIA erred in concluding that Cantarero did not show that his claimed mistreatment was so severe as to rise to the level of persecution. See Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006). Nor can we say that this bare threat was so menacing as to cause actual harm. See id.

Third, the BIA concluded that Cantarero did not meet his burden of proving that he likely faces persecution or torture in El Salvador in the future. The BIA did so on the grounds that (1) Cantarero presented no evidence that the El Salvadoran government is targeting former military deserters, and (2) Cantarero was able to return to El Salvador without incident in 2011 and stay for one month on a passport that he obtained from the El Salvadoran embassy under his own name. Our review of the record reveals nothing compelling a contrary conclusion.

---

372, 390 (3d Cir. 2010).

Fourth, the BIA concluded that Cantarero's new evidence did not warrant a remand because it did not satisfy the standard for reopening. The BIA did not explain why, but the basis for its conclusion is readily apparent because Cantarero's new evidence related solely to matters that were not in dispute or that were irrelevant to his applications. (A.8-24.) Cantarero's new evidence thus was not "material" as required by 8 C.F.R. § 1003.2(c)(1).

Finally, Cantarero did not directly challenge the IJ's denial of a final continuance before the BIA, though he mentioned in his brief that he had a "PCR appeal" pending. The BIA did not raise the issue sua sponte, and Cantarero likewise has not raised the issue on review. Nevertheless, to the extent that Cantarero's reference to a PCR appeal was sufficient to exhaust the issue, we cannot say that the IJ who denied the request abused her discretion. Cantarero's conviction remained valid for immigration purposes despite his PCR proceeding, see Paredes v. Att'y Gen., 528 F.3d 196, 198-99 (3d Cir. 2008), and Cantarero offered only the speculative possibility that he might obtain relief at some indeterminate time, see Khan, 448 F.3d at 235. As it turns out, the PCR court denied his petition and its ruling was recently affirmed. See State v. Cantarero, No. A-2788-16T2, 2018 WL 1801653, at *1 (N.J. Super. Ct. App. Div. Apr. 17, 2018).

### III.

For these reasons, we will deny Cantarero's petition for review.

5