**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-5092
_____

D. C. Docket No. 96-1584-CIV-KING

AMERICAN RED CROSS,

Plaintiff-Appellee,

versus

PALM BEACH BLOOD BANK, INC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(June 16, 1998)

Before TJOFLAT and BIRCH, Circuit Judges, and RONEY, Senior Circuit
Judge.

# BIRCH, Circuit Judge:

In this diversity case, we review the propriety of a preliminary injunction entered against one blood bank to prohibit it from using "trade secret" donor lists compiled by another, competing blood bank. On appeal from the district court's injunction, defendant-appellant argues both that plaintiff-appellee's lists are not protectable trade secrets and that the injunction is impermissibly vague. We vacate the injunction and remand the case to the district court for further proceedings.

## I. BACKGROUND

Defendant-appellant, Palm Beach Blood Bank, Inc. ("Palm Beach"), is a non-profit Florida corporation engaged in the business of collecting, processing, and distributing blood components. Similarly, plaintiff-appellee, American Red Cross ("Red Cross"), is also a non-profit corporation engaged in collecting, processing, and distributing blood components, though its activities are more national in scope. Despite a history of at least limited cooperation, Palm

Beach and Red Cross compete with each other for sponsors and donors. Competition between the two companies is especially keen regarding recruitment of apheresis donors, a small subset of blood donors willing to undergo a longer and less-comfortable donation procedure.

In October 1995, Palm Beach opened a Miami branch and over the next several months hired a number of Red Cross's Miami personnel. At least one of these former Red Cross employees took a list of Red Cross donors with her to Palm Beach, where she used the list to contact and recruit blood donors for her new employer. Soon after opening its Miami office, Palm Beach succeeded in recruiting several former Red Cross donors, including apheresis donors, to participate in Palm Beach's blood collection program.

In April 1996, Red Cross discovered that Palm Beach was using at least one of Red Cross's donor lists for Palm Beach's own solicitations, leading Red Cross to demand that Palm Beach cease all efforts to contact Red Cross's donors. Unsatisfied with Palm

3

Beach's response, Red Cross sought emergency relief on June 11, 1996, from the district court. Persuaded by Red Cross to take immediate action, the district court entered a broad temporary restraining order ("TRO") against Palm Beach.[1] Substantively, the TRO prohibited Palm Beach from, inter alia, "soliciting donations from any Red Cross donor" or engaging "in any way adversely affecting Red Cross's reputation or goodwill." R1-25-5. In addition, the TRO authorized Red Cross to enter Palm Beach's premises, access Palm Beach's computer files, and to recover any documents that "resemble[d]" Red Cross's "trade secrets." Id. at 8-12. Red Cross, accompanied by United States Marshals, entered Palm Beach's office and seized various pieces of evidence, including one of Red Cross's donor lists, on June 14, 1996.

On several days in late June and early July, 1996, the district court held evidentiary hearings on Red Cross's motion to convert the

---

[1]Unfortunately, neither the district court nor its court reporter has been able to locate any record of the ex parte proceeding conducted by the district court.

TRO into a preliminary injunction.  On July 5, Palm Beach moved to modify the TRO to allow Palm Beach to accept donations from persons whom it had not solicited from any Red Cross list.  Although the district court expressed its hope that Palm Beach's "reasonable request" might form the basis of a compromise between the parties, Red Cross objected on the ground that "basically, they are going to be exacerbating what they have already done by using our donors." R6-64-87, 91.  Following Red Cross's objection, the district court chose not to modify the TRO, without further explanation.

On August 6, 1996, the district court entered the following preliminary injunction that restrained Palm Beach from:

(a) possessing, copying, or making unauthorized use of Plaintiff's lists or any other documents that contain trade secrets that are the proprietary property of Plaintiff;
(b) contacting and/or soliciting donations from any donor whose name is contained on Plaintiff's lists;
© engaging in any other activity constituting a misappropriation of Plaintiff's lists, or in any way adversely affecting Plaintiff's reputation or good will;
(d) using any false designation of origin or false description which can or is likely to lead the trade or

public or individual members thereof to erroneously believe that Defendant is affiliated with Plaintiff;

(e) disposing of or destroying any documents that are relevant to the Complaint in this action, including but not limited to Plaintiff's lists, or Defendant's donor lists, or donor information, whether in hard copy form or on a computer, or any simulation or copy thereof, or any document or computer data which has its genesis from any of Plaintiff's lists;

(f) disposing of or destroying any documents or related materials that evidence, relate, or pertain to Defendant's misappropriation of Plaintiff's lists, as well as the records of donations solicited and obtained from Plaintiff's donors.

R2-49-2-3. Soon thereafter, Palm Beach filed an emergency motion for clarification, expressing concern that the injunction appeared to allow Red Cross to determine which of Palm Beach's competitive practices were illegitimate (and which might therefore might lead to sanctions for contempt). Rejecting Palm Beach's motion, the court accepted Red Cross's representation "that it [Red Cross] is not concerned by legitimate recruiting efforts and unsolicited donations" and ruled that any further clarification or explanation of its order would amount to an "advisory opinion." R2-48-1-2.

## II. DISCUSSION

Palm Beach argues that the district court should not have issued the preliminary injunction because Red Cross's lists are not trade secrets. Additionally, Palm Beach contends that the preliminary injunction is impermissibly vague. We review the district court's grant of a preliminary injunction for abuse of discretion, but we examine its legal determinations de novo. See Lucero v. Trosch, 121 F.3d 591, 599 (11th Cir. 1997). We will not disturb the district court's factual determinations unless they are clearly erroneous. See id. at 599.

## A. RED CROSS'S DONOR LISTS AS TRADE SECRETS

In order to secure a preliminary injunction, a plaintiff must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would

not disserve the public interest.  See Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994).  Accepting arguendo that Red Cross has satisfied the latter three of these requirements, Palm Beach argues that Red Cross cannot show a substantial likelihood of success on the merits because Red Cross has not kept its donor lists sufficiently confidential for them to qualify as trade secrets.[2]

Under Florida law, a trade secret consists of information that (1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy.  See Fla. Stat. § 688.002(4).  Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection.  See Bestechnologies, Inc. v. Trident Envtl. Sys., Inc., 681 So. 2d 1175, 1176 (Fla. Dist. Ct. App. 1996).  Moreover, an employer may not preclude its former employee from "utilizing contacts and expertise gained during his former employment."

---

[2]Although Palm Beach has not raised any issue regarding the "public interest" prong of the preliminary injunction test on appeal, the district court may wish to consider, on remand, whether trade secret injunctions between non-profit organizations serve the public interest.

Templeton v. Creative Loafing Tampa, Inc., 552 So. 2d 288, 290 (Fla. Dist. Ct. App. 1989). In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. See Lee v. Cercoa, Inc., 433 So. 2d 1, 2 (Fla. Dist. Ct. App. 1983).

After reviewing the incomplete record in this case, we are unable to determine that Red Cross is substantially likely to establish that its donor lists are trade secrets. Palm Beach has offered us a variety of evidence tending to show that Red Cross has not been particularly careful to protect the secrecy of its lists of names.[3] Some of Red Cross's lists appear to have been posted on a computer bulletin board freely accessible to Red Cross's competitors, while many of Red Cross's donor groups have publicly revealed their sponsorship of Red Cross's blood drives. It may also

---

[3]We note, however, that there is no evidence in the record that Red Cross has failed to keep its donors' personal medical information confidential.

be the case, as Palm Beach claims, that some former Red Cross employees have professional relationships with individual Red Cross donors, relationships which these workers may now rely upon without infringing any of Red Cross's rights. See Templeton, 552 So. 2d at 290.

To rebut this evidence, Red Cross presents us with a number of confidentiality agreements that it requires its employees to sign. From the incomplete record now before us, though, it appears that many, if not all, of these confidentiality agreements protect donors' *personal medical information*, not their *identities*. Further, even if we were to assume that these agreements proved that Red Cross had taken reasonable steps to protect the secrecy of its lists, Red Cross has pointed us to no evidence to rebut Palm Beach's contention that the lists at issue are not in fact secret but have instead entered the public domain.

Because the record at this preliminary stage is incomplete, and because we have decided to remand for reconsideration of the

wording of the injunction, we do not think it prudent to reach any conclusion now regarding the protectability of Red Cross's lists. Instead, we remand the case to the district court for further development of the record and entry of more particularized findings of fact.

## B. THE SCOPE OF THE PRELIMINARY INJUNCTION

Palm Beach argues that several provisions of the preliminary injunction are so vague as to violate Rule 65(d) of the Federal Rules of Civil Procedure ("Rule 65(d)").  As we have previously held, a court must craft its orders so that those who seek to obey may know precisely what the court intends to forbid.  See  Hughey v. JMS Dev., 78 F.3d 1523, 1531 (11th Cir. 1996). Thus, Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Fed. R. Civ. P. 65(d).  Under this rule, "an ordinary

person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." Hughey, 78 F.3d at 1531 (quoting 11A Wright et al., Federal Practice and Procedure § 2955 at 308-09 (1995)).[4]

Applying Rule 65(d), we believe that two significant portions of the injunction do not give Palm Beach sufficient notice as to what actions the district court means to prohibit. First, the injunction prohibits "contacting and/or soliciting donations from any donor whose name is contained on Plaintiff's lists." R2-49-2. Although at first glance this directive from the district court may seem simple enough, Palm Beach has no way to determine whether a given member of the public might happen to appear on a Red Cross list not in Palm Beach's possession. As the district court itself acknowledged during its preliminary injunction hearing:

> Well, almost everybody that has ever donated before as
> a Red Cross donor, therein lies one of the problems. The

---

[4]Rule 65(d) not only serves the interest of fairness but also helps to ensure informed and intelligent appellate review. See Hughey, 78 F.3d at 1531.

American Red Cross has been in existence for 50-odd years according to the testimony, or maybe longer, so it is very difficult, I presume, to go out and compete in the recruiting of donors without touching upon someone in this five percent of the donating population that is or has been at some point in time a Red Cross donor.

I mean, if the two entities are going to compete at all, if they are entitled to compete, it is obvious they are going to be competing for each others' donors.

R6-88. Since an ordinary person in Palm Beach's position could not ascertain which members of the public might be off-limits for its recruitment efforts, this provision contravenes Rule 65(d).[5]

Second, the injunction bars Palm Beach from "possessing, copying, or making unauthorized use of Plaintiff's lists <u>or any other documents that contain trade secrets that are the proprietary property of Plaintiff</u>." R2-46-2 (emphasis added). As Red Cross argues, a nonspecific injunction may sometimes be justified "when

---

[5]We are also concerned that this portion of the injunction, along with the section banning Palm Beach from "in any way adversely affecting Plaintiff's reputation or goodwill," R2-46-2, may constitute an impermissible prior restraint on Palm Beach's legitimate competitive speech. See <u>In re Nat'l Serv. Corp. v. Turner Adver. Co.</u>, 742 F.2d 859, 862 (5th Cir. 1984) (holding that injunction prohibiting advertising of company's bankruptcy was unconstitutional prior restraint). Because we conclude that the injunction is improper under Rule 65(d), however, we do not reach this constitutional issue.

13

the information needed to make the order specific in form is known only to the party to be enjoined." Wright, § 2955 at 323. In this case, though, Red Cross has not suggested even a genre of trade secret beyond its donor lists that Palm Beach might misappropriate, nor has Red Cross explained why *only* Palm Beach should be thought to have knowledge of those Red Cross trade secrets that the injunction might protect. Indeed, the lack of any apparent factual basis for this open-ended portion of the injunction has left Palm Beach understandably uncertain as to what the district court means to prohibit. While we would not expect an injunction in a case such as the one at bar to describe with particularity each of the documents that Palm Beach might misappropriate, we do think that the district court's injunction should put Palm Beach on notice as to the *types* of information, "other" than "lists," to which it applies. See E.W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1114 (8th Cir. 1969); Hughey, 78 F.3d at 1531. The district court may not simply order Palm Beach to "obey the law." See Hughey, 78 F.3d at 1531.

14

Finally, we note that, assuming Red Cross's lists are protectable trade secrets, the district court could readily have drafted a more narrow injunction. Such an injunction would presumably have prohibited Palm Beach from (1) possessing, using, or copying Red Cross's lists or any other specific types of valuable confidential documents identified by the district court, (2) using false designations or descriptions to mislead individuals or businesses into believing that Palm Beach is affiliated with Red Cross,[6] and (3) disposing of or destroying material evidence. Such an injunction would have given Palm Beach much fairer notice of what the district court intended to prohibit, without compromising whatever legitimate need Red Cross may have for protection of its trade secrets.

In sum, the district court has crafted an injunction that leaves Palm Beach without reasonable notice of what the court means to

---

[6]Though such a provision would not have any basis in trade secret law, it would address the trademark or fraud related issues that apparently motivated the district court to include it in the current injunction. Because neither party has questioned the propriety of the current provision, we assume, without deciding, that it is appropriate.

15

prohibit. Regardless of whatever assurances Red Cross may have given the district court or Palm Beach regarding its intended manner of enforcing the injunction, Palm Beach should not have to risk citation for contempt in order to determine the true scope of activity barred by the district court's order. See Hughey, 78 F.3d at 1531. Therefore, we hold that the preliminary injunction is impermissibly vague under Rule 65(d), and we vacate the district court's order.

## III. CONCLUSION

In its attempt to protect Red Cross from misappropriation of its trade secrets, the district court has fashioned an injunction that is impermissibly vague under Rule 65(d). Further, the district court has based its injunction on an incomplete record that may not establish a substantial likelihood that Red Cross's lists are in fact trade secrets. Therefore, we VACATE the preliminary injunction and REMAND this case to the district court for further development of the record and entry of more particularized findings of fact. If, upon

16

reconsideration, the district court concludes that Red Cross can show a substantial likelihood of success on the merits of its claims, the district court may craft a more narrow injunction to protect Red Cross's rights from abuse by Palm Beach.