# United States Court of Appeals
# for the Federal Circuit

---

**DEPUY SYNTHES PRODUCTS, INC., DEPUY SYNTHES SALES, INC.,**
*Plaintiffs-Appellees*

**v.**

**VETERINARY ORTHOPEDIC IMPLANTS, INC.,**
*Defendant-Appellant*

---

2020-1514

---

Appeal from the United States District Court for the Middle District of Florida in No. 3:18-cv-01342-HES-PDB, Senior Judge Harvey E. Schlesinger.

---

Decided: March 12, 2021

---

JASON SHEASBY, Irell & Manella LLP, Los Angeles, CA, argued for plaintiffs-appellees. Also represented by ROBERT TROY SMITH, GrayRobinson, P.A., Jacksonville, FL.

JEFF E. SCHWARTZ, Fox Rothschild, LLP, Washington, DC, argued for defendant-appellant. Also represented by AUSTEN CONRAD ENDERSBY; RYAN NORTH MILLER, Philadelphia, PA; CINDY LAQUIDARA, Akerman, LLP, Jacksonville, FL.

---

Before PROST, *Chief Judge*, CLEVENGER and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

Defendant Veterinary Orthopedic Implants, Inc. ("VOI") appeals an order of the United States District Court for the Middle District of Florida. Over VOI's objection, the district court directed the clerk to unseal the amended complaint of Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (collectively "DePuy"). Because we conclude that the district court did not abuse its discretion in performing its obligation to ensure public access to court documents, we affirm.

## BACKGROUND

The parties are competitors in the market for veterinary orthopedic implants. On November 12, 2018, DePuy, the owner of U.S. Patent No. 8,523,921 (the "'921 patent") sued VOI, alleging infringement of the '921 patent. On May 15, 2019, the district court entered the parties' joint proposed protective order, which designated various categories of information as "Confidential Material" and "Highly Confidential Material—Attorney Eyes Only." J.A. 546. The information designated Highly Confidential encompassed "supplier . . . names and identifying information." *Id.*

On July 10, 2019, DePuy filed under seal an unopposed motion for leave to amend the complaint. The amended complaint joined as a defendant the manufacturer of VOI's accused products (hereinafter the "Manufacturer") and disclosed the identity of the Manufacturer (hereinafter the "Manufacturer Identity"), as well as information about the business relationship between the Manufacturer and VOI (hereinafter the "Other Information"). According to VOI, both the Manufacturer Identity and Other Information are

Highly Confidential within the meaning of the parties' protective order.

The district court directed the parties to file briefs addressing whether the amended complaint should be filed on the public record, redacted, or filed under seal. VOI argued that the Manufacturer Identity and the Other Information constituted trade secrets. To protect such information and prevent harm to its business interests, VOI contended, it was necessary to file the amended complaint under seal, with only a redacted version available to the public.

DePuy argued that the Manufacturer Identity was already publicly known and did not warrant sealing or redacting the amended complaint. DePuy argued that the Manufacturer's website advertises its business of manufacturing orthopedic devices; that VOI and the Manufacturer have no confidentiality agreement; that the Manufacturer ships its products to VOI using a public carrier; and that a third party was aware that the Manufacturer supplied products to VOI. DePuy took no position regarding VOI's claim that the Other Information should be redacted.

After considering the parties' briefs and supplemental filings, the district court ordered that the amended complaint be filed on the public record without redaction of either the Manufacturer Identity or Other Information. The district court reasoned that the Manufacturer Identity was not a trade secret and did not otherwise merit confidentiality. The district court's order did not specifically analyze the Other Information. VOI appealed. The notice of appeal was originally filed in the Eleventh Circuit, which then transferred the appeal to this court. We granted a stay of the district court's order pending appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1) and, as we discuss below, the collateral order doctrine.

DISCUSSION

This case requires us to decide two principal issues: first, whether we have jurisdiction to hear this interlocutory appeal under the collateral order doctrine; and second, on the merits, whether the district court abused its discretion in ordering the amended complaint to be filed on the public docket.

I

The parties dispute whether the collateral order doctrine confers jurisdiction to hear this appeal. Questions of our jurisdiction are governed by Federal Circuit law. *See, e.g., Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003) ("We apply our own law and not the law of the regional circuit to issues concerning our jurisdiction." (citing *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1379 (Fed. Cir. 1996))); *Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed. Cir. 1987) (holding that "deference" to regional circuit law "is inappropriate on issues of our own appellate jurisdiction").

The courts of appeals "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. The collateral order doctrine is a narrow exception to the usual rule of finality and allows an interlocutory appeal when a trial court's order "affect[s] rights that will be irretrievably lost in the absence of an immediate appeal." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013) (quoting *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430–31 (1985)); *see also Cohen v. Benefit Indus. Loan Corp.*, 337 U.S. 541, 545–47 (1949) (recognizing the doctrine). For the collateral order doctrine to apply, an order must meet three requirements; it must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." *Apple*, 727 F.3d at 1220 (quoting *Richardson-Merrell*, 472 U.S. at 431).

The district court's order unsealing the amended complaint satisfies all three conditions.  First, the order conclusively determined that the information VOI seeks to protect does not merit sealing or redaction and should be filed on the public docket.  Second, the sealing issue is unrelated to the merits of DePuy's infringement claim but implicates the "important balance between the public's interest in understanding judicial proceedings and the parties' right to access the courts without being unduly required to disclose confidential information."  *See id.*  Third, the order could not be meaningfully reviewed after a final judgment because the information in the amended complaint, once disclosed to the public, could not be made confidential again.  *Id.*; *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (holding that appeal of disclosure order after final judgment "will often come too late" because "the cat is out of the bag"); *Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010) (holding that disclosure of redacted text would be "effectively unreviewable" because "the disclosure cannot be undone"); *In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008) (noting that "a remedy after final judgment cannot unsay the confidential information that has been revealed"); *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again.").  We therefore have jurisdiction under the collateral order doctrine.

DePuy relies heavily on *Awuah v. Coverall North America, Inc.*, 585 F.3d 479 (1st Cir. 2009), in arguing that the order here is not appealable because it does not present an important issue sufficient to confer jurisdiction under the collateral order doctrine.  In *Awuah*, the issue was not about public disclosure, but whether certain discovery material needed to be disclosed to the plaintiffs without being subject to the protective order; this apparently affected the plaintiffs' ability to show the information to experts and potential witnesses.  *See id.* at 483.  Here, by contrast, the

district court's order implicates the public's right to access judicial filings on the public docket. We find this right sufficiently important to distinguish this case from cases involving routine discovery orders governing disclosures between parties to a case.

## II

### A

On the merits, we must determine whether the district court abused its discretion by ordering that the amended complaint be filed on the public docket, rather than under seal or with redactions. A district court abuses its discretion if its decision rests on a legal error or a clearly erroneous finding of fact. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010). Here, VOI contends that the district court did both.

The Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). This longstanding right helps secure the integrity and transparency of the judicial process. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (noting right of access promotes public review and democratic legitimacy of the federal courts). There is accordingly a "presumption that judicial records should be available to the public." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1236 (11th Cir. 2013); *see also Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020) (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016)); *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011).

While highly significant, the public's right of access is not absolute. *Nixon*, 435 U.S. at 598. In deciding whether to seal a court record, courts must "weigh[] the interests

advanced by the parties in light of the public interest and the duty of the courts." *Id.* at 602 (footnote omitted).

Whether the presumption of public access has been rebutted must be determined "in light of the relevant facts and circumstances of the particular case." *Id.* at 599. We apply regional circuit law in determining the applicable standard. *See Apple*, 727 F.3d at 1220. The law in this regard is substantially the same across circuits: the parties seeking confidentiality must present a strong justification to overcome the presumption of public access. *See Romero*, 480 F.3d at 1246 (requiring "good cause" to restrict "common law right of access"); *see also In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672–73 (3d Cir. 2019) ("The party seeking to overcome the presumption of access bears the burden of showing . . . 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" (citation omitted)); *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) (requiring party seeking "continued sealing" to "articulate a compelling interest that outweighs the strong presumption of public access"); *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) ("A party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." (citation omitted)); *In re Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (holding that "[o]nly the most compelling reasons can justify non-disclosure of judicial records" (citation omitted) (alteration in original)).

However, a party's "proprietary interest in information sometimes overcomes the interest of the public in accessing the information." *Romero*, 480 F.3d at 1246 (citations omitted); *see also Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("The publication of materials that could result in infringement upon trade secrets has long been considered a factor that would overcome this strong presumption [of public access].")); *Kamakana*, 447 F.3d at

1179 (citing *Nixon*, 435 U.S. at 598) (noting that "the use of records to . . . release trade secrets" is generally a compelling reason for sealing court records).

Consistent with these principles, a complaint—including the parties named in the litigation—must generally be disclosed to the public unless there are compelling countervailing circumstances; indeed, the Federal Rules of Civil Procedure require all parties to be named in a complaint. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."); *see also FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (holding that "access to the complaint is almost always necessary if the public is to understand a court's decision"); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (holding that pseudonymous filing "runs afoul of the public's common law right of access" and allowed only when necessary "to protect a person from harassment, injury, ridicule or personal embarrassment"); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (noting that designating party identity as confidential implicates First Amendment rights (citing *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 580 & n.17 (1980))).

B

Here, VOI argues that the fact that the protective order accorded "Highly Confidential" status to the Manufacturer Identity and Other Information required redaction. We do not agree.

To the extent that a protective order governs discovery and determines the confidentiality of the material that is exchanged between the parties, there is generally no issue of public access. *See Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 745–46 (11th Cir. 1982); *see also Awuah*, 585 F.3d at 483 (collecting cases to this effect). But where the protective order purports to address the confidentiality of information on the public docket, the presumption of public access applies—and district courts have

an independent duty to protect the public's right of access—even when the parties agree to maintain confidentiality of publicly filed information pursuant to a protective order. *See Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1173–74 (11th Cir. 2019) (holding that district courts must "balanc[e] the respective competing interests of all parties" before abrogating the right of public access); *see also In re Violation of Rule 28(d)*, 635 F.3d at 1358 ("[T]he district court 'cannot abdicate its responsibility . . . to determine whether filings should be made available to the public' simply because the parties agree to [a] protective order." (quoting *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 222 (6th Cir. 1996))); *Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) (holding that while "[m]any a litigant would prefer that the subject of the case . . . be kept from the curious," "[w]hat happens in the halls of government is presumptively public business").

In arguing for confidentiality, the only theory VOI presented to justify sealing the Manufacturer Identity is that it constitutes a trade secret. The district court's conclusion that the Manufacturer Identity has not been shown to be a trade secret is well supported.

"Federal courts apply the trade secret law of the appropriate state," *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1116 (Fed. Cir. 1996); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida trade secret law),[1] here the state of Florida. Florida has adopted the Uniform Trade Secrets

---

[1]    VOI makes no argument under the federal Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376, and, in any event, the two statutes establish substantially similar definitions of trade secrets and misappropriation. *Compare* 18 U.S.C. § 1839, *with* Fla. Stat. § 688.002 (2020).

Act. *Lake Worth Surgical Ctr., Inc. v. Gates*, 266 So. 3d 198, 202 (Fla. Dist. Ct. App. 2019). The Florida Uniform Trade Secrets Act ("FUTSA") defines a trade secret as information that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) <u>Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.</u>

Fla. Stat. § 688.002(4) (emphasis added); *see also Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 808 (Fla. Dist. Ct. App. 2014) (quoting elements of § 688.002(4)). As is evident from the statute, then, a trade secret under Florida law "consists of information that (1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy." *Am. Red Cross*, 143 F.3d at 1410 (citing § 688.002(4)); *see also TLS Mgmt. & Mktg. Servs., LLC v. Rodríguez-Toledo*, 966 F.3d 46, 52 (1st Cir. 2020) (noting that the Uniform Trade Secrets Act "requires proof that the alleged trade secret (1) was distinct from general knowledge; (2) was not readily ascertainable; (3) had independent value; and (4) was subject to reasonable security measures").

Under the Uniform Trade Secrets Act, whether information constitutes a trade secret is a question of fact. *See, e.g., Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410–11 (11th Cir. 1998); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003); *see also Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010). We thus review such determinations for clear error. *See*

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

The district court found that the Manufacturer Identity was not a trade secret because it was not actually secret and was not subject to reasonable security measures. This finding was based on the Manufacturer's "open and public" advertisement of "its availability as a manufacturer of orthopedic devices"; the absence of any confidentiality agreement between VOI and the Manufacturer; and a third-party email suggesting that VOI's relationship with the Manufacturer "is indeed known within the relevant community." J.A. 3–4.

We need not address whether all of the district court's findings were clearly erroneous, since we conclude that the district court did not clearly err by finding that VOI did not establish that it took reasonable measures to protect the Manufacturer Identity. VOI and the Manufacturer admittedly did not enter into an agreement to keep the relationship confidential. But VOI correctly argues, citing *Dotolo v. Schouten*, 426 So. 2d 1013 (Fla. Dist. Ct. App. 1983), that the lack of an express confidentiality agreement is not dispositive.

When there is no express agreement, the party seeking protection must establish the existence of a "confidential relationship . . . giv[ing] rise to an implied obligation not to use or disclose" a trade secret, *id.* at 1015, i.e., that there was an understanding of confidentiality. In *Dotolo*, "[t]he appellees were instructed that the formula was a trade secret and that the appellants wished to protect it," thereby creating "a confidential relationship." *Id.* Here, by contrast, there is no evidence that VOI established a confidential relationship with the Manufacturer that would create an obligation or incentive for the Manufacturer to keep its relationship with VOI confidential. Nor has VOI offered any evidence that its relationship with the Manufacturer was confidential by way of a custom or course of dealing.

12          DEPUY SYNTHES PRODUCTS, INC. v.
            VETERINARY ORTHOPEDIC IMPLANTS, INC.

Such evidence of confidentiality is necessary to show reasonable efforts to protect a trade secret when there is no explicit confidentiality agreement. Without any express agreement or other evidence of a confidential relationship, VOI's internal efforts to keep the Manufacturer Identity confidential are not sufficient, in and of themselves, to constitute "reasonable efforts" within the meaning of the FUTSA. *See, e.g.*, *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1299–301 (11th Cir. 2018) (finding that the plaintiff's internal information security measures were not "reasonable efforts" under the FUTSA, given lack of express confidentiality agreement and minimal evidence of implied confidential relationship); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1550 (11th Cir. 1996) (holding that, absent a written confidentiality agreement, a "unilateral assertion" of "an implied confidential relationship" was insufficient evidence and did not demonstrate "reasonable efforts" under the FUTSA). VOI has not shown how the Manufacturer Identity is a trade secret.

C

The remaining question is whether the district court abused its discretion by ordering the unsealing of the other allegedly confidential information (i.e., the Other Information). This information generally encompasses internal VOI emails and certain contractual terms with the Manufacturer.

Given the presumption of public access, VOI must establish the existence of harm flowing from the disclosure of such information to claim confidential treatment. As required by the Supreme Court in *Nixon*, there must be some threatened harm to "a litigant's competitive standing" to justify sealing business information contained in a judicial record. 435 U.S. at 598; *see also Carrizosa v. Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251–52 (11th Cir. 2020) (holding that appellants were not entitled to confidential treatment "without a distinct concrete harm justifying

good cause"). Although VOI argued that disclosure of the Other Information would harm its "proprietary and competitive business interests," J.A. 2057, VOI provided no evidence to that effect. Neither of the declarations that VOI produced in support of sealing the amended complaint addresses this issue. VOI failed to demonstrate how it would be harmed by the public filing of the amended complaint including the Other Information, given that we have determined that the district court did not clearly err by finding that the Manufacturer Identity is itself not a trade secret entitled to confidential treatment.

While DePuy did not object to sealing the Other Information, the district court was required to make its own independent decision by weighing the parties' interests in confidentiality against the public right of access. The order concluded that there was no "showing of good cause" that would "overcome the public's common-law right of access" to the amended complaint—i.e., that VOI had not rebutted the presumption of public access. J.A. at 2, 4. VOI has not shown a clear error in the district court's determination that the Other Information was not entitled to confidential treatment.

We note that on appeal, as in the district court, DePuy takes no position as to whether the Other Information should be unsealed. If DePuy no longer views this information as essential to its complaint, the parties may agree to file a new amended complaint with such information deleted.

## CONCLUSION

The district court did not abuse its discretion by ordering the amended complaint to be unsealed.

## AFFIRMED