# United States Court of Appeals for the Federal Circuit

---

**IQE PLC,**
*Plaintiff-Appellee*

**v.**

**NEWPORT FAB, LLC, DBA JAZZ SEMICONDUCTOR, TOWER U.S. HOLDINGS INC., TOWER SEMICONDUCTOR LTD., PAUL D. HURWITZ, EDWARD PREISLER, DAVID J. HOWARD, MARCO RACANELLI,**
*Defendants-Appellants*

---

2024-1124

---

Appeal from the United States District Court for the Central District of California in No. 8:22-cv-00867-CJC-KES, Judge Cormac J. Carney.

---

Decided: October 15, 2025

---

MICHAEL E. JOFFRE, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for plaintiff-appellee. Also represented by KRISTINA CAGGIANO KELLY, JOHN CHRISTOPHER ROZENDAAL.

ADAM LLOYD, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, CA, argued for defendants-appellants.

Also represented by ZACHARY FAIGEN, ERIC J. GREENBERG, JASON D. RUSSELL; DOUGLAS R. NEMEC, New York, NY.

---

Before HUGHES, STARK, *Circuit Judges*, and WANG, *District Judge*.[1]

HUGHES, *Circuit Judge.*

Newport Fab, LLC dba Jazz Semiconductor; Tower U.S. Holdings Inc.; Tower Semiconductor Ltd.; Paul D. Hurwitz; Edward Preisler; David J. Howard; and Marco Racanelli appeal the denial of their motion to strike California state-law claims of trade secret misappropriation and interference with economic opportunity by the United States District Court for the Central District of California under California laws that seek to limit Strategic Lawsuits Against Public Participation (SLAPP). We conclude that the denial of that motion in this instance is immediately appealable as a matter of Federal Circuit law under the collateral order doctrine. Because we hold that the district court erred in its analysis, we vacate the district court's denial of the motion to strike and remand for further proceedings consistent with this opinion.

I

IQE PLC "makes 'wafer' products, which are used in semiconductors and ultimately consumer electronics like smartphones and car sensors." J.A. 2. IQE claims that "[i]n 2018, it developed a 'porous silicon technology' that is a 'superior alternative' to non-porous silicon technology." J.A. 2. Newport Fab, LLC dba Jazz Semiconductor; Tower U.S. Holdings Inc.; Tower Semiconductor Ltd.; Paul D. Hurwitz; Edward Preisler; David J. Howard; and Marco Racanelli

---

[1] Honorable Nina Y. Wang, District Judge, United States District Court for the District of Colorado, sitting by designation.

(hereinafter referred to collectively as Tower) are semiconductor manufacturers known for making specialized integrated circuits that utilize wafers like the ones that IQE makes. J.A. 2.

In November 2015, "IQE and Tower entered into a mutually binding Non-Disclosure Agreement (NDA) as to any confidential information they disclose to one another as part of their business transactions." J.A. 24; *see* J.A. 55–56 (NDA). In November 2018, IQE and Tower began discussions contemplating a potential collaboration in which IQE would provide its porous wafers for Tower to use in its semiconductor products. J.A. 2. During those discussions with Tower, IQE alleged that Tower disclosed "proprietary trade secrets pertaining to IQE's porous silicon and crystalline epitaxy wafers during two presentations and follow-up communications." J.A. 2 (internal citations removed).

In October 2019, while discussions between the parties were ongoing, Tower filed a patent application that ultimately issued as U.S. Patent No. 11,164,740. J.A. 58. In February 2020, the parties ended their negotiations, which failed to result in any collaboration. J.A. 3. By August 2021, Tower filed three more patent applications: two issued as U.S. Patent Nos. 11,195,920 and 11,145,572, and the third remains pending as U.S. Pat. App. No. 17/400,712. J.A. 3; J.A. 74; J.A. 91; 128. IQE alleges that those patent applications all "recite the porous semiconductor technology developed by IQE" and thus were derived from IQE's trade secrets disclosed to Tower during negotiations. J.A. 3. Individuals associated with IQE were not named as inventors in any of the four patent applications. J.A. 3.

In April 2022, IQE sued Tower in the Central District of California asserting two federal law claims: (1) violation of the Defend Trade Secrets Act, and (2) correction of inventorship under 35 U.S.C. § 256; and five claims arising under California state law: (1) violation of the California

Trade Secrets Act, (2) breach of contract, (3) violation of California's Unfair Competition Law, (4) intentional interference with prospective economic advantage, and (5) negligent interference with prospective economic advantage. J.A. 3. Tower moved to dismiss IQE's complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6) and simultaneously filed an anti-SLAPP motion to strike[2] IQE's intentional interference with prospective economic advantage and California trade secret misappropriation claims. J.A. 4. The district court granted in part and denied in part, with leave to amend, Tower's motion to dismiss and denied Tower's motion to strike. J.A. 12.

This appeal concerns only the denial of Tower's anti-SLAPP motion to strike. On October 4, 2022, Tower timely appealed the district court's Order Denying its Special Motion to Strike, issued on September 28, 2022, to the Ninth

---

[2] "A [Strategic Lawsuit Against Public Participation, (SLAPP)] is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). When a plaintiff attempts to base state law tort liability on a defendant's exercise of its right to petition the government, California law "provides for a special motion to strike that is intended to stop such lawsuits early in the litigation process." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013). This "special motion to strike" is often referred to as an "anti-SLAPP motion." CAL. CIV. PROC. CODE § 425.16(b)(1). Under California's anti-SLAPP statute, if a cause of action "aris[es] from any act . . . in furtherance of [a] person's right of petition or free speech," the court shall strike the cause of action unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.*

Circuit. J.A. 148–50; *see* 28 U.S.C. § 2107. The Ninth Circuit determined that "the Federal Circuit would have had jurisdiction at the time this appeal was filed" under 28 U.S.C. § 1295(a) and accordingly transferred the appeal to this Court pursuant to 28 U.S.C. § 1631. J.A. 15-17.

## II

This appeal raises a jurisdictional question of first impression for this Court: whether we have jurisdiction over an appeal from a district court's denial of an anti-SLAPP motion to strike before entry of a final judgment. Before reaching the merits of the case, we "ha[ve] a special obligation to 'satisfy [ourselves] . . . of [our] own jurisdiction." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). We are not restricted to the arguments made by the parties in considering the scope of our jurisdiction. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020). We must establish that we have two different types of jurisdiction to reach the merits of this appeal: (1) subject-matter jurisdiction and (2) appellate jurisdiction.

In its transfer order, the Ninth Circuit determined that "[t]he Federal Circuit has exclusive [subject matter] jurisdiction over [this] appeal[]" because "IQE's well-pleaded complaint contains a claim for correction of inventorship under 35 U.S.C. § 256," which is "a claim created by federal patent law." J.A. 14–15. It accordingly concluded that transfer to this court was "in the interest of justice" because Tower "raise[d] non-frivolous merits questions" and there was "no evidence of wrongdoing." J.A. 17. We agree with the Ninth Circuit that subject matter jurisdiction properly lies in our court, for the reasons identified by our sister circuit.

The Ninth Circuit also noted that it would have had appellate jurisdiction over this appeal under Ninth Circuit

law, if it had subject matter jurisdiction, because "[t]he denial of an anti-SLAPP motion [to strike] is an immediately appealable final decision pursuant to the collateral order doctrine." J.A. 14–15 (quoting *Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023)).

Tower argues that we "must accept that transfer decision 'by adhering strictly to principles of law of the case' unless [we] make[] the 'exceptional' finding that the Ninth Circuit's transfer decision was implausible or 'clearly erroneous.'" Appellant's Opening Br. 7 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 819 (1988)). While we agree that *Christianson* may provide some limits on our ability to scrutinize subject matter jurisdiction in cases where an appeal comes to us by way of transfer by a sister circuit, *see* 486 U.S. at 816 ("[T]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious cycle of litigation."), to the extent Tower contends that *Christianson* requires us to accept as law of the case a sister circuit's determination regarding appellate jurisdiction, we reject that contention. We have unequivocally stated, in connection with a dispute as to whether the collateral order doctrine confers jurisdiction, that "[q]uestions of our jurisdiction are governed by Federal Circuit law." *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1368 (Fed. Cir. 2021) (first citing *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003) ("We apply our own law and not the law of the regional circuit to issues concerning our jurisdiction."); and then citing *Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed. Cir. 1987) (holding "deference" to regional circuit law "is inappropriate on issues of our own appellate jurisdiction")).

We thus consider de novo whether we have appellate jurisdiction. Our appellate jurisdiction is typically limited to "a final decision of a district court." 28 U.S.C. § 1295(a); *see CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1314 (Fed. Cir. 2000) ("Under the [final

judgment] rule, parties may only appeal 'final decisions of the district courts.'" (citation omitted)). This "requir[es] parties to raise all claims of error in a single appeal following final judgment on the merits" and "forbid[s] piecemeal disposition on appeal of what for practical purposes is a single controversy." *Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003) internal citations and quotations omitted).

But "[t]he collateral order doctrine is a narrow exception to the usual rule of finality and allows an interlocutory appeal when a trial court's order affects rights that will be irretrievably lost in the absence of an immediate appeal." *DePuy Synthes,* 990 F.3d at 1368 (internal alterations and quotation marks omitted). "For the collateral order doctrine to apply, an order must meet three requirements; it must (1) 'conclusively determine the disputed question'; (2) 'resolve an important issue completely separate from the merits of the action'; and (3) 'be effectively unreviewable on appeal from a final judgment.'" *Id.* "Exceptions to [the final judgment rule] are rare and disfavored." *MIT v. Shire Pharms. Inc.*, 839 F.3d 1111, 1126 (Fed. Cir. 2016) (O'Malley, J., concurring).

Because this case has not been finally decided by the district court, we must determine whether the denial of Tower's anti-SLAPP motion to strike is immediately appealable under the collateral order exception as a matter of Federal Circuit law—a question of first impression. We consider each of the three collateral order factors in making this determination, looking at California state anti-SLAPP law as analyzed by both California courts and the Ninth Circuit.[3]

---

[3]   While we are not bound by the Ninth Circuit's caselaw on this matter, we still consider it persuasive

Regarding the first collateral order factor, the Ninth Circuit has stated that denial of an anti-SLAPP motion conclusively determines the disputed question because "[i]f an anti-SLAPP motion to strike is granted, the suit is dismissed, and the prevailing defendant is entitled to recover his or her attorney's fees and costs. If the motion to strike is denied, the anti-SLAPP statute does not apply and the parties proceed with the litigation." *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (citing CAL. CIV. PROC. CODE § 425.16(c)).[4] Thus, the district court's denial of Tower's anti-SLAPP motion to strike conclusively determined the disputed issue below—that the anti-SLAPP statute did not apply to the claims Tower challenged.

Regarding the second collateral order factor, the anti-SLAPP motion to strike resolves an important issue separate from the merits of the action. "The purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim." *Id.*; *see also Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (Cal. 2005) ("[T]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." (citation omitted)); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009,

---

authority. *See, e.g.*, *Bank of Guam v. United States*, 578 F.3d 1318, 1326 n.4 (Fed. Cir. 2009) (citing *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1376–77 (Fed. Cir. 2006)) ("We have not previously addressed some of the exact issues presented in this appeal and, thus, while not binding, the decisions of other regional circuits are persuasive authority and instructive.").

[4]    We find the Ninth Circuit's reasoning evaluating the three collateral order factors in *Batzel*, as reiterated in *DC Comics*, 706 F.3d at 1011, particularly persuasive on the issue of whether the collateral-order exception should apply to California anti-SLAPP motions to strike.

1015–16 (9th Cir. 2013) ("It would be difficult to find a value of a 'high[er] order' than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute." (citation omitted)). As explained by the Ninth Circuit in a concurring opinion, "while the inquiry on the motion to strike may glance at the merits, its central purpose is to provide *an added statutory protection from the burdens of litigation that is unavailable during the ultimate merits inquiry.*" *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1185 (9th Cir. 2013) (Wardlaw & Callahan, JJ., concurring) (emphasis added). That purpose of protecting a party from having to defend itself in court for exercise of a constitutionally protected right is separate from the merits of a case.

Regarding the third collateral order factor, "[b]ecause the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression, the district court's denial of an anti-SLAPP motion would effectively be unreviewable on appeal from a final judgment." *Batzel*, 333 F.3d at 1025. The purpose of an anti-SLAPP motion would not be served if a party is forced to litigate the entire case before denial of its motion to strike can be reviewed. If Tower's conduct challenged by IQE is in fact protected by California anti-SLAPP law, forcing Tower to defend its conduct in court would deprive it of the protections provided by the anti-SLAPP statute. Thus, the denial of the motion to strike would be effectively unreviewable on appeal after final judgment has been entered, since Tower will already have had to litigate the case.

The denial of an anti-SLAPP motion to strike under California law thus appears to fit squarely within the collateral order exception to the final-judgment rule. We agree with the Ninth Circuit that it is further "instructive that California's anti-SLAPP statute provides that an order denying an anti-SLAPP motion may be appealed immediately" when litigated in California state court. *Id.* (citing

CAL. CIV. PROC. CODE § 425.16(j)). We thus conclude that denial of an anti-SLAPP motion to strike under California law is immediately appealable under the collateral order doctrine as a matter of Federal Circuit law.

IQE makes two arguments that the exercise of our jurisdiction over this appeal would nonetheless be improper; we address each in turn. First, IQE cites its filing of an amended complaint after Tower's appeal of the denial of its first motion to strike as indicative that the district court must nonetheless revisit the merits to rule on Tower's second motion to strike its new complaint. Appellee's Br. 16–17. IQE's amended complaint was improper under Ninth Circuit law, which dictates proper procedure in the district court, because it attempted to replead claims that were pending appeal. *See Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2010) (district court proceedings cannot "alter[] the status quo" pending resolution of appeal because notice of appeal is jurisdictional); *Davis v. United States*, 667 F.2d 822, 824 (9th Cir. 1982) (district court erred in permitting plaintiff to amend claims after notice of appeal on file). There is no doubt that "there is still a live controversy concerning the district court's order." *Greensprings Baptist Christian Fellowship Tr. v. Cilley*, 629 F.3d 1064, 1066 n.1 (9th Cir. 2010) (rejecting argument that filing "an amended complaint and renewed motion to strike" rendered appeal moot where district court "stayed the action pending the resolution of this appeal"). Moreover, as Tower explained to the district court, Tower's second anti-SLAPP motion "was filed solely to preserve [its] position" pending appeal given IQE's improper amended complaint, not "to relitigate the Court's September 28 order." Appellants' Reply Br. 12–13 (quoting J.A. 294).

Second, IQE argues the basis for Tower's argument that the denial of an anti-SLAPP motion is immediately appealable hinges on anti-SLAPP law being applicable in federal courts at all, and some circuit courts have rejected

the applicability of anti-SLAPP statutes, holding that they conflict with the Federal Rules of Civil Procedure. Appellee's Br. 20–22 (collecting cases). This is neither a jurisdictional question nor one unique to patent law; thus, we defer to the Ninth Circuit's caselaw on this matter. *Allergan, Inc. v. Athena Cosms., Inc.*, 738 F.3d 1350, 1354 (Fed. Cir. 2013) ("Where an issue is not unique to patent law, we apply the law of the regional circuit from which the case arises." (citation omitted)). The Ninth Circuit recognizes California anti-SLAPP law as applicable in federal court despite potential conflicts with the Federal Rules of Civil Procedure. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–35 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) (analyzing the "degree to which the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure").

We do not hold here that denials of anti-SLAPP motions to strike arising under any state's law are immediately appealable as a matter of right before this Court. Our holding today applies only, at this point, to California's anti-SLAPP statute. If we are presented with a case arising under another state's law, in determining whether we have appellate jurisdiction for a given case raising an issue regarding an anti-SLAPP motion to strike, we must evaluate the relevant state's anti-SLAPP statute at issue on appeal and evaluate how that tool has been exercised in practice to understand whether that given instance comports with the collateral-order exception to the final decision rule under Federal Circuit law.

## III

Because we conclude that we have jurisdiction over this appeal, we reach the merits and consider whether the district court erred in denying Tower's anti-SLAPP motion to strike at step one of its analysis. We conclude that it did.

Because the interpretation and application of California's anti-SLAPP statute "is not unique to patent law, [the

panel must] apply the law of the regional circuit from which the case arises." *Allergan, Inc.*, 738 F.3d at 1354 (applying Ninth Circuit law). The Ninth Circuit reviews the denial of anti-SLAPP motions to strike de novo. *See Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 951 (9th Cir. 2013). The Ninth Circuit has held that it is bound by "pronouncements of the state's highest court" in interpreting California's anti-SLAPP statute, *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010), and regularly "tak[es] [its] cue from the California legislature and courts." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 421–22 (9th Cir. 2014). Because "the California Supreme Court has interpreted the anti-SLAPP statute broadly," the Ninth Circuit has "followed suit." *Id.* at 421; *see also* CAL. CIV. PROC. CODE § 425.16(a) ("[T]his section [providing for anti-SLAPP protections] shall be construed broadly.").

Under California's anti-SLAPP statute, if a cause of action "aris[es] from any act . . . in furtherance of [a] person's right of petition or free speech," the court shall strike the cause of action unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b)(1). Thus, analyzing an anti-SLAPP motion involves a two-step inquiry with shifting burdens. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In the first step, the defendant must "show[] that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.*; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003); *see also Gangland*, 730 F.3d at 954 (activity often simply referred to as "protected activity"). "If the defendant satisfies this requirement, [in the second step] 'the burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal.'" *Herring Networks*, 8 F.4th at 1155 (quoting *Makaeff*, 715 F.3d at 261) (alteration in original).

Tower argued to the district court that IQE's claims of negligent and intentional interference with prospective economic advantage claims and its claim for violation of the California Unfair Trade Secrets Act (CUTSA) were based on Tower's acts in furtherance of its right of petition under the United States and California Constitutions, namely, the filing of patent applications, and that IQE cannot establish a probability that it will prevail on those claims. The district court ended its analysis at step one, concluding that "[IQE]'s injury [did] not result from the mere filing of a patent application, as [Tower] argue[s]. Rather, [IQE]'s injury results from [Tower's] alleged trade secret theft and alleged misrepresentations to the United States Patent and Trademark Office that they invented the porous silicon technology disclosed in the patent application." J.A. 10. This conclusion improperly collapsed the two steps.

The question for the district court at step one should have been only whether the suit was based on protected activity. Here, that basis clearly was: the filing of the patent application. Whether IQE's trade secret claims are meritorious is assessed at step two. The Ninth Circuit's decision in *Mindys Cosms., Inc. v. Dakar* is instructive. 611 F.3d 590, 594–95 (9th Cir. 2010). In *Mindys*, the defendant, an attorney, filed an anti-SLAPP motion to strike claims of legal malpractice, breach of fiduciary duty, fraudulent concealment, and conversion against him related to his filing of a trademark application. There, the Ninth Circuit broke step one of the anti-SLAPP analysis into two prongs: (1) identifying the protected act, and (2) determining whether the causes of action arose from this protected act. *Id.* at 596–98. Regarding the first prong of step one, it held that a trademark application filing is a protected act under the anti-SLAPP statute. The Ninth Circuit noted that under California law, "communications made in the course of 'official' proceedings . . . are protected," while "'ministerial' acts involving primarily private transactions are not." *Id.* at 596–97. It explained that "[f]iling a

trademark application is more than merely a ministerial act connected with a business transaction. It is an attempt to establish a property right under a comprehensive federal statutory scheme." *Id.* at 597. That reasoning applies with equal force to patent applications, the filing of which accordingly is also a protected act.

Regarding the second prong of the step one analysis, *Mindys* further specifies that a claim arises from protected activity for the purposes of step one if, but-for the protected activity, the plaintiff would not have a claim against the defendant. *Id.* at 598; *see also Navellier v. Sletten*, 29 Cal. 4th 82, 89 (Cal. 2002) ("In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'") (quoting CAL. CIV. PROC. CODE § 425.16(b)(2)). IQE argues that its misappropriation claim would have arisen regardless of whether Tower chose to actually file the patent application because its misappropriation claim arose when Tower prepared its patent applications. Appellee's Br. 34. However, in its complaint, IQE alleged only that Tower's "disclosure and use of IQE's trade secrets" *in its patent applications* "amounts to misappropriation under CAL. CIV. [PROC.] CODE § 3426.1(b)." J.A. 42–43 (small caps added). J.A. 42–43. IQE did not allege any other activity by Tower that would have otherwise given rise to its trade secret misappropriation claim. But for the act of filing the patent applications, IQE's claims of trade secret misappropriation, as alleged in its complaint, would not have arisen. There would have been no disclosure of the alleged trade secrets if, for example, Tower had merely prepared patent applications containing IQE's trade secrets without filing them with the USPTO. Thus, under step one of the anti-SLAPP analysis, Tower's protected activity of filing a patent application is what gave rise to the cause of action that is the subject of the anti-SLAPP motion to strike. California law is clear that "mere possession of information is not enough

to establish improper acquisition of a trade secret." *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 333 (2020); *see also FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009) (under CUTSA "[m]ere possession of trade secrets . . . is not enough"); *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528 (2008) ("[M]isappropriation requires a greater showing than mere possession by a defendant of trade secrets where the defendant acquired the trade secret by proper means.") (citations omitted).

The California Supreme Court has explained that this is the proper scope of the inquiry at step one; the step one analysis should not include scrutinizing the lawfulness of the protected activity. In *Navellier*, the plaintiff accused the defendant of breach of contract and fraud related to his filing of counterclaims and negotiating, executing, and repudiating a release. 29 Cal. 4th at 89–90. The Court held that these were acts the defendant took "in furtherance of [his] right of petition or free speech . . . as that phrase is defined in the anti-SLAPP statute. The constitutional right of petition encompasses the basic act of filing litigation." *Id.* at 90 (internal quotations and citations omitted). The Court clarified that "conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning. The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Id.* at 92. (emphasis in original). It explained, "no cause of action qualifies as a SLAPP merely because the defendant's actions conceptually fall within the ambit of the [anti-SLAPP] statute's initial prong." *Id.* at 95. It then clarified that "[d]espite the fact [the defendant] has made a threshold showing that plaintiffs' action is one arising from statutorily protected activity, plaintiffs may defeat the anti-SLAPP motion by establishing a probability of prevailing on their claim"—something that is established under step two. *Id.*; *see also*

*Gangland*, 730 F.3d at 954 (analyzing and quoting to *Navellier* to explain that "any claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the second step of the analysis when the plaintiff bears the burden to show a probability of prevailing"(quotation modified)).

IQE may be able to prove that Tower's patent filing is outside the scope of the protected right to file a patent application if it can prove Tower, in fact, misappropriated a trade secret. However, IQE and the district court were incorrect in conducting this analysis at step 1. As Tower argues, if the step one analysis has the scope IQE and the district court contend it does, a court would never reach step two: "because the mere allegation of 'wrongful' petitioning activity would always defeat the defendant's showing under the first step." Appellant's Opening Br. 5.

Thus, we vacate and remand for the district court to reconsider Tower's anti-SLAPP motion to strike by considering the possibility of trade secret misappropriation by Tower only at step two of its analysis.[5]

IV

We have considered the parties' remaining arguments and find them unpersuasive. Because the district court erred in its analysis of Tower's anti-SLAPP motion to strike, we vacate its denial of the motion and remand for

---

[5] IQE implies that we may reach step two in the first instance. *See* Appellee's Br. 46. We disagree per the holdings of the California state courts on the matter. *See Collier v. Harris*, 240 Cal. App. 4th 41, 58 (2015), *as modified* (Sept. 1, 2015) (remanding to the trial court because "[t]he majority of appellate courts" have declined to reach the second step of the anti-SLAPP because deciding the merits would "deprive the parties of a layer of independent review").

proper consideration of that motion consistent with this opinion.

**VACATED AND REMANDED**

Costs

No costs.